Jon B. Fougner (State Bar No. 314097)
jon@fougnerlaw.com
600 California Street, 11th Floor
San Francisco, California 94108
Telephone: (415) 577-5829
Facsimile: (206) 338-0783

[Additional counsel appear on signature page]

*Attorneys for Plaintiff William Loftus and*
*Sidney Naiman and the Proposed Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM LOFTUS and SIDNEY NAIMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>SUNRUN INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR INJUNCTION AND DAMAGES**<br><br>**Class Action**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs William Loftus and Sidney Naiman, by their undersigned counsel, for this class action complaint against Defendant Sunrun Inc. ("Sunrun") and its present, former, and future direct and indirect parent companies, subsidiaries, affiliates, agents, and related entities, alleges as follows:

### I.   INTRODUCTION

1. <u>Nature of Action</u>: This case arises from Defendant's unsolicited telemarketing in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2. The telemarketing was conducted using an automated telephone dialing system ("ATDS"), a tactic among those that inspired Congress to enact the TCPA and that most infuriate consumers to this day.

3. The telemarketing targeted, among other phone lines, cellular telephones and numbers listed on the National Do Not Call Registry ("NDNCR").

4. For every 7,000,000 robocalls, there's only one TCPA lawsuit in federal court. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (4,392 TCPA complaints).

5. Demonstrating the massive scope of its robocalling, Sunrun has lost this 1-in-7,000,000 lottery repeatedly, being sued under the TCPA time and again. *E.g.*, Compl., *Ewing v. Encore Solar, LLC*, Case No. 3:18-cv-02247-CAB-MDD (S.D. Cal. Sept. 27, 2018), ECF No. 1; Notice Removal, *Va v. Sunrun Inc.*, Case No. 1:18-cv-00856-JHR-KBM (D.N.M. Sept. 12, 2018), ECF No. 1; Notice Removal, *Barker v. Sunrun Inc.*, Case No. 1:18-cv-00855-KK-LF (D.N.M. Sept. 12, 2018), ECF No. 1; Compl., *Taylor v. Sunrun Inc.*, Case No. 5:18-cv-01207-JGB-SHK (C.D. Cal. June 5, 2018), ECF No. 1; Compl., *Knapp v. Sunrun, Inc.*, Case No. 2:18-cv-00509-MCE-AC (E.D. Cal. Mar. 8. 2018), ECF No. 1; Compl., *Bozarth v. Sunrun, Inc.*, Case No. 3:16-cv-3550-EMC (N.D. Cal. June 24, 2016), ECF No. 1; Compl., *Slovin v. Sunrun, Inc.*, Case No. 4:15-cv-05340-YGR (N.D. Cal. Nov. 20, 2015), ECF No. 1.

## II.   PARTIES

6. Plaintiff Loftus is an individual.

7. He resides in Ventura County, California.

8. Plaintiff Naiman is an individual.

9. He resides in Maricopa County, Arizona.

10. Defendant is a corporation.

11. It is a Delaware corporation.

12. Its principal place of business is 595 Market Street, 29th Floor, San Francisco, California 94105.

### III. JURISDICTION AND VENUE

13. <u>Jurisdiction</u>: This Court has federal-question subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

14. <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over Defendant because:

    a.    Defendant is headquartered in California;

    b.    Defendant's conduct at issue was organized from that California headquarters; and

    c.    Defendant's conduct at issue intentionally targeted Plaintiff Loftus, a California resident, while he was in California, at his cellular telephone number, which bears a California area code.

15. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiffs' claims—namely, the direction of the illegal telemarketing from Defendant's headquarters—occurred in this District.

16. <u>Intradistrict Assignment</u>: Assignment to this Division is proper pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiffs'— namely, the direction of the illegal telemarketing from Defendant's headquarters— occurred in San Francisco.

### IV. FACTS

**A. The Enactment of the TCPA and its Regulations**

17. <u>Robocalls Outlawed</u>: Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1). Calls made by an ATDS or with a prerecorded or artificial voice are referred to as "robocalls" by the Federal Communications Commission ("FCC") and herein. Encouraging people to hold

robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

18. <u>Rationale</u>: In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

19. The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

20. <u>Prior Express Written Consent</u>: The FCC has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted) (internal quotation marks omitted).

21. <u>Do Not Call Registry</u>: Additionally, the TCPA outlaws unsolicited telemarketing (robocalls or otherwise) to phone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(c)(5).

**B.     The Worsening Problem of Robocalls and Spam Texts**

22. Unfortunately, the problems Congress identified when it enacted the TCPA have only grown worse in recent years.

23. "Month after month, unwanted [communications], both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

24. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

25. "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

26. In 2017, the FTC received 4,501,967 complaints about robocalls, up from 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

27. Like most other leading newspapers, *The New York Times* has been writing and reporting on the exploding number of robocall complaints filed by consumers with the FTC and widespread consumer outrage about illegal telemarketing. Gail Collins, *Let's Destroy Robocalls*, N.Y. Times. (Mar. 1, 2019), https://www.nytimes.com/2019/03/01/opinion/robocall-scams.html; Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),  https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

28. An Emmy-winning journalist recently observed: "Everybody is annoyed by robocalls. Hatred of them might be the only thing that everyone in America agrees on now." *Robocalls*, Last Week Tonight with John Oliver (HBO Mar. 10, 2019), *available at* https://www.youtube.com/watch?v=FO0iG_P0P6M.

**C.    Defendant**

29. Defendant sells goods and services related to solar energy.

30. One of Defendant's marketing strategies involves an ATDS.

31. One of Defendant's marketing strategies involves the use of an ATDS to place telemarketing phone calls.

32. Defendant uses ATDS equipment that has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person).

33. Recipients of these outbound calls, including Plaintiff, did not consent to receive them.

34. Defendant's telemarketing calls were not necessitated by an emergency.

**D.    Defendant's Unsolicited, Automated Telemarketing to Plaintiff Loftus**

35. Plaintiff Loftus is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

36. He is the user of a phone number that begins "(805) 405" (the "Loftus Phone Number"). All calls to him referenced herein were to the Loftus Phone Number.

37. The Loftus Phone Number is assigned to a cellular telephone service.

38. The Loftus Phone Number has been listed on the National Do Not Call Registry since 2006.

39. Plaintiff Loftus never consented to receive calls from Defendant.

40. He never gave the Loftus Phone Number to Defendant.

41. He never did business with Defendant.

42. Defendant called the Loftus Phone Number.

43. Defendant made telemarketing calls to the Loftus Phone Number.

44. Defendant made telemarketing calls to the Loftus Phone Number using an ATDS.

45. Plaintiff Loftus was called on January 25, 2019.

46. When he answered, there was a long click and pause, indicating that an ATDS had been used to dial the call.

47. On information and belief, and based in part on the area code of the caller IDs, the caller IDs were spoofed or selected so as to create the false impression that the call was being dialed by a live person in Plaintiff's community rather than a distant computer.

48. During the call, Defendant's goods and services were promoted.

49. Plaintiff Loftus was not interested.

50. After the January 25, 2019, call, Plaintiff Loftus called Defendant several times asking that it stop calling him.

51. Nevertheless, Defendant contacted him again, offering its goods and services.

52. The caller IDs that appeared on the calls included (805) 741-1860 and (805) 202-5175.

E.   **Defendant's Unsolicited, Automated Telemarketing to Plaintiff Naiman**

53. Plaintiff Naiman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

54. He is the user of a phone number that begins "(925) 735" (the "Naiman Phone Number"). All calls referenced herein were to the Naiman Phone Number.

55. The Naiman Phone Number is assigned to a cellular telephone service.

56. Plaintiff Naiman never consented to receive calls from Defendant.

57. He never gave the Naiman Phone Number to Defendant.

58. He never did business with Defendant.

59. Defendant called the Naiman Phone Number.

60. Defendant made telemarketing calls to the Naiman Phone Number.

61. Defendant made telemarketing calls to the Naiman Phone Number using an ATDS.

62. The caller IDs that appeared on the calls was (925) 247-1615.

63. On information and belief, and based in part on the area code of the caller IDs, the caller IDs were spoofed or selected so as to create the false impression that the call was being dialed by a live person in Plaintiff's community rather than a distant computer.

64. The calls were made on March 15, 2019.

65. Plaintiff Naiman received an e-mail from "Mustafa from Sunrun," mustafa.fazli@sunrun.com.

### F. The Nuisance Created by Defendant's Automated Telemarketing

66. Before directing its automated telemarketing to them, Defendant never did anything to confirm that Plaintiffs had consented to its telemarketing.

67. Plaintiffs' attention was caught by the fact that the calls appeared local.

68. The telemarketing alleged herein:

    a.    invaded Plaintiffs' privacy and solitude;

    b.    interrupted Plaintiffs' train of thought;

    c.    wasted Plaintiffs' time;

    d.    annoyed Plaintiffs;

    e.    harassed Plaintiffs; and

    f.    consumed the battery life of Plaintiffs' cellular telephones.

## V.  CLASS ACTION ALLEGATIONS

69. <u>Cellular Telephone Class Definition</u>: Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of two classes (each a "Class," collectively, the "Classes"). The first Class (the "Cellular Telephone Class") is defined as follows: All persons in the United States to whom:

1         a.     Defendant and/or a third party acting on its behalf made a call or sent a
2  text message;
3         b.     to a cellular telephone number;
4         c.     using an ATDS or an artificial or prerecorded voice;
5         d.     between August 22, 2018, and the first day of trial.
6      70. Plaintiffs are members and proposed representatives of the Cellular Telephone Class.
7      71. <u>DNC Class Definition</u>: The second Class (the "DNC Class") is defined as follows:
8  All persons in the United States to whom:
9         a.     Defendant and/or a third party acting on its behalf made a call or sent a
10 text message;
11        b.     to a residential (including residential cellular) telephone number listed on
12 the NDNCR for at least 31 days before at least two of such communications in a 12-month
13 period;
14        c.     for telemarketing purposes;
15        d.     between August 22, 2018, and the first day of trial.
16     72. Plaintiff Loftus is a member and proposed representative of the DNC Class.
17     73. <u>Exclusions</u>: Excluded from the Classes are Defendant, any entity in which Defendant
18 has a controlling interest or that has a controlling interest in Defendant, Defendant's legal
19 representatives, assignees, and successors, the judges to whom this case is assigned and the
20 employees and immediate family members of all of the foregoing.
21     74. <u>Numerosity</u>: The Classes are so numerous that joinder of all their members is
22 impracticable.
23     75. Defendant is among the largest solar energy companies in the United States.
24     76. Defendant is publicly traded.
25     77. Sending a robotext or placing a robocall costs less than one cent, so Defendant could
26 afford to do so at massive scale.
27     78. <u>Commonality</u>: There are many questions of law and fact common to Plaintiff and
28 members of the Classes. Indeed, the very feature that makes Defendant's conduct so annoying—

its automated nature—makes this dispute amenable to classwide resolution. These common questions of law and fact include, but are not limited to, the following:

    a.    whether the calls were dialed *en masse* by ATDS;

    b.    whether Defendant's desire to sell solar goods and services constitutes an "emergency" within the meaning of the TCPA;

    c.    whether Defendant is in the United States;

    d.    whether Defendant had a pattern and practice of failing to obtain prior express written consent from people to whom it directed telemarketing;

    e.    whether Defendant had a pattern and practice of failing to remove cellular telephone numbers from its telemarketing lists;

    f.    whether Defendant had a pattern and practice of failing to remove numbers on the National Do Not Call Registry from its telemarketing lists;

    g.    whether Defendant's violations of the TCPA were knowing or willful; and

    h.    whether Defendant should be enjoined from continuing to robocall and telemarket to people in violation of the TCPA.

79. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Classes. Plaintiffs' claims and those of the Classes arise out of the same course of conduct by Defendant and are based on the same legal and remedial theories.

80. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained competent and capable counsel experienced in TCPA class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. The interests of Plaintiffs and their counsel are aligned with those of the proposed Classes.

81. <u>Superiority</u>: The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any individual issues, making a class action the superior means of resolution. Adjudication of these common issues in a single action has important advantages, including judicial economy, efficiency for Class members and classwide

- 10 -
COMPL.
*Loftus v. Sunrun Inc.*

*res judicata* for Defendant. Classwide relief is essential to compel Defendant to comply with the TCPA.

      a.    <u>Control</u>: The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action ($500 to $1,500 per violation) are dwarfed by the cost of prosecution.

      b.    <u>Forum</u>: The forum is a desirable, efficient location in which to resolve the dispute because Defendant is headquartered in it.

      c.    <u>Difficulties</u>: No significant difficulty is anticipated in the management of this case as a class action. Management of the claims at issue is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated (and thus highly uniform) and because the TCPA articulates bright-line standards for liability and damages.

82. <u>Appropriateness</u>: Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis.

## VI. FIRST CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)—Robocalling)**
**On Behalf of Plaintiffs and the Cellular Telephone Class**

83. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

84. Defendant and/or its affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiffs and members of the Cellular Telephone Class using an ATDS and/or artificial or prerecorded voice without prior express written consent.

85. Plaintiffs and members of that Class are entitled to an award of $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

86. Plaintiffs and members of that Class are also entitled to and do seek an injunction prohibiting Defendant and/or its affiliates and agents from violating the TCPA, 47 U.S.C. §

227(b)(1), by placing non-emergency calls to any cellular telephone number using an ATDS and/or artificial or prerecorded voice without prior express written consent of the receiving party.

## VII.   SECOND CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)—Robocalling)**
**On Behalf of Plaintiffs and the Cellular Telephone Class**

87. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

88. Defendant and/or its affiliates or agents knowingly and/or willfully violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiffs and members of the Cellular Telephone Class using an ATDS and/or artificial or prerecorded voice without prior express written consent.

89. Plaintiffs and members of that Class are entitled to an award of up to $1,500 in damages for each such knowing and/or willful violation. 47 U.S.C. § 227(b)(3).

## VIII.   THIRD CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)—Telemarketing)**
**On Behalf of Plaintiff Loftus and the DNC Class**

90. Plaintiff Loftus realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

91. Defendant and/or its affiliates or agents violated the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing multiple unsolicited telemarketing calls within a 12-month period to the residential (including residential cellular) telephone numbers of Plaintiff Loftus and members of the DNC Class even though those numbers had been listed on the NDNCR for at least 31 days.

92. Plaintiff Loftus and members of that Class seek an award of $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

93. Plaintiff Loftus and members of that Class are also entitled to and do seek an injunction prohibiting Defendant and/or its affiliates and agents from violating the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including text messages) to any telephone numbers listed on the NDNCR for at least 31 days.

## IX. FOURTH CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)—Telemarketing)**
**On Behalf of Plaintiff Loftus and the DNC Class**

94. Plaintiff Loftus realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

95. Defendant and/or its affiliates or agents knowingly and/or willfully violated the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing multiple unsolicited telemarketing calls within a 12-month period to the residential (including residential cellular) telephone numbers of Plaintiff Loftus and members of the DNC Class even though those numbers had been listed on the NDNCR for at least 31 days.

96. Plaintiff Loftus and members of that Class are entitled to and seek an award of up to $1,500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all members of the Classes, pray for judgment against Defendant as follows:

A. Certification of the proposed Classes;

B. Appointment of Plaintiffs as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that actions complained of herein violate the TCPA;

E. An order enjoining Defendant and its affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiffs and the Classes of damages, as allowed by law;

G. An award to Plaintiffs and the Classes of costs and attorneys' fees, as allowed by law, equity and/or California Code of Civil Procedure section 1021.5;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Orders granting such other and further relief as the Court deems necessary, just, and proper.

- 13 -
COMPL.
*Loftus v. Sunrun Inc.*

Case 4:19-cv-01608-YGR   Document 1   Filed 03/27/19   Page 14 of 15

## XI. DEMAND FOR JURY

Plaintiffs demand a trial by jury for all issues so triable.

## XII. SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.

RESPECTFULLY SUBMITTED AND DATED this 27th day of March, 2019.

By: */s/ Jon B. Fougner*
Jon B. Fougner

Anthony I. Paronich, *Pro Hac Vice Forthcoming*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Edward A. Broderick, *Pro Hac Vice Forthcoming*
ted@broderick-law.com
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Matthew P. McCue, *Pro Hac Vice Forthcoming*
mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

- 14 -
COMPL.
*Loftus v. Sunrun Inc.*

| | |
|---|---|
| 1 | |
| 2 | Andrew W. Heidarpour, *Pro Hac Vice Forthcoming* |
| 3 | aheidarpour@hlfirm.com<br>HEIDARPOUR LAW FIRM, PPC |
| 4 | 1300 Pennsylvania Avenue NW, 190-318<br>Washington, DC 20004 |
| 5 | Telephone: (202) 234-2727 |
| 6 | *Attorneys for Plaintiffs William Loftus and* |
| 7 | *Sidney Naiman and the Proposed Classes* |

- 15 -
COMPL.
*Loftus v. Sunrun Inc.*