Anthony I. Paronich (*pro hac vice*)
anthony@paronichlaw.com
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

Edward A. Broderick (*pro hac vice*)
ted@broderick-law.com
Broderick Law, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Matthew P. McCue (*pro hac vice*)
mmccue@massattorneys.net
The Law Office Of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Andrew W. Heidarpour (*pro hac vice*)
AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

*Attorneys for Plaintiffs William Loftus,
Sidney Naiman, and Louis Naiman, and the
Proposed Classes*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| WILLIAM LOFTUS, SIDNEY NAIMAN, and LOUIS NAIMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SUNRUN INC., and MEDIA MIX 365, LLC, and DOES 1-10, <br><br> Defendants. | Case No. 3:19-cv-01608-RS <br><br> **Hon. Richard Seeborg** |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

    A.    Statutory Background of Plaintiffs' Claims .................................................. 2

    B.    Plaintiffs' Allegations ................................................................................... 3

    C.    The Litigation and Settlement Negotiations ................................................. 3

    D.    Terms of the Settlement ................................................................................ 4

        1.    The Proposed Settlement Class ......................................................... 4

        2.    The Released Claims ......................................................................... 6

        3.    The Settlement Fund and Allocation of the Settlement Fund ................. 6

        4.    The Settlement Administrator and Settlement Administration Costs ...... 7

        5.    The Requested Fee Award .................................................................. 7

        6.    The Requested Service Award ........................................................... 7

        7.    The Cy Pres Recipient ...................................................................... 8

III.    ARGUMENT AND AUTHORITY ...................................................................... 8

    A.    The proposed Settlement Classes should be preliminarily certified. ................... 9

        1.    The Settlement Classes satisfy the requirements of Rule 23(a). ............. 9

        2.    The Settlement Class satisfies the requirements of Rule 23(b)(3). ......... 11

    B.    The proposed Settlement should be preliminarily approved. ............................ 12

        1.    The Strength of Plaintiffs' case. ....................................................... 13

        2.    The risk, expense, complexity, and likely duration of further litigation. ......................................................................................... 14

        3.    The risk of maintaining class action status through trial. ...................... 14

        4.    The amount offered in Settlement. .................................................... 14

        5.    The extent of discovery completed and the stage of proceedings. ......... 15

        6.    The experience and views of counsel. ................................................ 15

        7.    The presence of a governmental participant. ...................................... 16

        8.    The reaction of Settlement Class Members to the proposed Settlement. ..................................................................................... 16

        9.    Lack of collusion among the parties. ................................................. 16

    C.    Plaintiffs' attorneys' fees are reasonable. ................................................... 17

    D.    The Service Awards are reasonable. .......................................................... 17

E.      The proposed Notice Plan should be approved. .................................................. 18

F.      The schedule for final approval. ....................................................................... 19

IV.     CONCLUSION ........................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*ACA Int'l v. FCC,*
    885 F.3d 687 (D.C. Cir. 2018) ............................................................13

*Adams v. AllianceOne Receivables Mgmt., Inc.,*
    No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) .......................15

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) .......................................................................9

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ......................................................16

*In re Bluetooth Headset Products Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ...........................................................17

*Campbell-Ewald Co. v. Gomez,*
    136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ............................................2

*In re Capital One Tel. Consumer Prot. Act Litig.,*
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................15

*Celano v. Marriott Int'l Inc.,*
    242 F.R.D. 544 (N.D. Cal. 2007) ......................................................10

*Churchill Village, L.L.C. v. General Electric,*
    361 F.3d 566 (9th Cir. 2004) ...........................................................12

*Custom LED, LLC v. eBay, Inc.,*
    No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ..............14

*In re DISH Network, LLC,*
    28 FCC Rcd. 6574 (2013) ...............................................................14

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) .......................................................9, 11

*Estrada v. iYogi, Inc.,*
    No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ...........15

*Facebook, Inc. v. Duguid,*
    No. 19-511, 2020 U.S. LEXIS 3559 (July 9, 2020) ..................................13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................12

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................16

*Hawthorne v. Umpqua Bank*,
    No. 11-cv-6700-JST, 2014 WL 4602572 (N.D. Cal. Sept. 15, 2014) ...................19

*Ikuseghan v. Multicare Health System*,
    No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015) ................12

*Knight v. Red Door Salons, Inc.*,
    No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...........................16

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ........................................................................14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ........................................................................12

*Markos v. Wells Fargo Bank, N.A.*,
    No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ..............18

*Marks v. Crunch*,
    904 F.3d 1041 (9th Cir. 2018) ........................................................................13

*McDermet v. Trinity Heating & Air, Inc.*,
    C.A. No. 17-10566, 2018 U.S. Dist. LEXIS 22229 (D. Mass. Feb. 12, 2018) ......2

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..........................................................................15

*In re Nat'l Collegiate Athletic Ass'n*,
    2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ....................................................18

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................9

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................................8

*Pelletz v. Weyerhaeuser Co.*,
    592 F. Supp. 2d 1322 (W.D. Wash. 2009) ......................................................18

*Radcliffe v. Experian Info. Solutions*,
    715 F.3d 1157 (9th Cir. 2013) ........................................................................17

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................................9, 17

*Schaffer v. Litton Loan Servicing, LP*,
    No. CV 05-07673 MMM, 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) .........................19

*Steinfeld v. Discover Fin. Servs.*,
    No. C 12-01118, Dkt. No. 96 (N.D. Cal. Mar. 10, 2014) .....................................................15

*Sykes v. Mel Harris & Assoc., LLC*,
    09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) .......................................18

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..............................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .........................................................................................................11

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .................................................................................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    MDL No. 2672 CRB (JSC), 2017 WL 2212783 (N.D. Cal. May 17, 2017) ..........................9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................................10

*Wellens v. Sankyo*,
    Case No. 3:13-cv-00581-WHO, 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ...................................................................................................................................8

*Whitaker v. Bennett Law, PLLC*,
    No. 13-3145, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) .................................................10

**California Cases**

*Smith v. LoanMe, Inc.*,
    E069752, 2019 WL 6974386 (Cal. App. 4th Dist. Dec. 20, 2019) ....................................3, 13

**Federal Statutes**

28 U.S.C.
  § 1715 ..................................................................................................................16

47 U.S.C.
  § 227(b) .................................................................................................................1
  § 227(b)(1) ............................................................................................................2
  § 227(c) ...........................................................................................................1, 2, 3
  § 227(c)(5) ............................................................................................................2

**California Statutes**

California Penal Code
  § 632.7 ..........................................................................................................1, 2, 13

**Other Authorities**

47 C.F.R. § 64.1200(c)(2) .............................................................................................2

Fed. R. Civ. P. 23 ..................................................................................................9, 18

Fed. R. Civ. P. 23(a) .............................................................................................9, 10

Fed. R. Civ. P. 23(a)(3) .............................................................................................10

Fed. R. Civ. P. 23(b) ...................................................................................................9

Fed. R. Civ. P. 23(b)(3) ........................................................................................11, 12

Fed. R. Civ. P. 23(e) ...................................................................................................9

Fed. R. Civ. P. 23(e)(1) .............................................................................................18

Fed. R. Civ. P. 23(f) .................................................................................................14

## I.  INTRODUCTION

Plaintiffs William Loftus, Sidney Naiman and Louis Naiman ("Plaintiffs") seek preliminary approval of a proposed settlement (attached hereto as Exhibit 1) ("Settlement Agreement" or "Settlement") that resolves claims against Defendant for its alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) and (c) ("TCPA" and "TCPA Class") and the California Penal Code § 632.7 ("CIPA" and "CIPA Class"). The Settlement requires defendant Sunrun Inc. ("Sunrun" or "Defendant") to pay $5,500,000.00 to establish a common fund for the benefit of the settlement class members.[1]

The Settlement is an excellent result for consumers and compares favorably to other TCPA settlements. The Settlement is non-reversionary- meaning under no circumstances will any settlement funds revert to Sunrun.[2] Each class member who submits a claim will receive a pro rata share of the Settlement, in an amount estimated to be $57.00. *See* Ex 2, McCue Decl. Given the benefits of the Settlement, in light of the risks of continued litigation, the proposed Settlement is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily certifying the proposed Settlement Classes; (2) naming Plaintiffs as Class Representatives; (3) appointing the below signed counsel as Class Counsel; (4) granting preliminary approval of the Settlement; (5) appointing Kurtzman Carson Consultants as the Settlement Administrator, (6) approving the proposed Notice Plan; and (7) approving deadlines for objections, exclusions, and claims, and setting briefing deadlines and a hearing for final approval.

---

[1] Sunrun does not oppose this motion insofar as it supports the Settlement. Sunrun does not concede or admit, and in fact disputes, many of Plaintiffs' assertions. All capitalized terms not defined herein have the meanings set forth in the Settlement Agreement.

[2] The non-reversionary nature of the Settlement is in compliance with the Northern District's Procedural Guidance for Class Action Settlements, §1(h) (noting the 9th Circuit's disfavor for reversionary settlements).

## II.   BACKGROUND

**A.   Statutory Background of Plaintiffs' Claims**

The TCPA, 47 U.S.C. §227(c) prohibits telemarketing to residential telephone lines registered on the National Do Not Call Registry ("DNC" or the "Registry"). The DNC allows consumers to register their personal telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Section 227(b) of the TCPA further renders it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1). The FCC has reasonably interpreted 'call' under the TCPA to encompass both voice calls and text calls." *McDermet v. Trinity Heating & Air, Inc.,* Civil Action No. 17-10566, 2018 U.S. Dist. LEXIS 22229, at *11 (D. Mass. Feb. 12, 2018) *citing Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009). *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016) ("It is undisputed that a text message to a cellular telephone is a covered "call" under the TCPA.") Finally, California Penal Code § 632.7 prohibits one party to a telephone call from intentionally recording the conversation without the knowledge or consent of the other while the person being recorded is on a cellular telephone. Penal Code § 632.7 is violated the moment the recording is made without the consent of all

parties thereto, regardless of whether it is subsequently disclosed. *But see Smith v. LoanMe, Inc.*, E069752, 2019 WL 6974386 (Cal. App. 4th Dist. Dec. 20, 2019)

## B.   Plaintiffs' Allegations

Plaintiffs originally filed suit against Sunrun on March 27, 2019. ECF #1. After extensive investigation, Plaintiffs filed an Amended Complaint on June 26, 2019. ECF #36. The Amended Complaint alleged that Mr. Loftus received illegal telemarketing solicitations from Sunrun in violation of the TCPA on his residential line registered on the DNC in violation of 47 U.S.C. §227(c). *Id.* at ¶79-101. The Amended Complaint further alleged that the solicitations to Mr. Loftus were also in violation of CIPA. *Id.* The Amended Complaint also alleged that Sidney Naiman and Louis Naiman received illegal telemarketing solicitations from Sunrun in violation of the TCPA. *Id.* at ¶102-139. *See* Ex 2, McCue Decl.

## C.   The Litigation and Settlement Negotiations

The instant litigation was filed in March of 2019. *See* ECF #1. Immediately upon filing the original Complaint, Plaintiffs began an intensive investigation in Sunrun's and its co-defendant's Media Mix 365, LLC's telemarketing practices. On June 29, 2019, Plaintiffs filed against Media Mix a Motion for a Temporary Restraining Order, and submitted extensive declarations and evidence in support. ECF #39-1. A Temporary Restraining Order was issued by this Court on July 2, 2019, which ordered Media Mix, a vendor that offered leads to Sunrun, to preserve all evidence as to telemarketing conducted "on behalf of" Sunrun. ECF #41. A Preliminary Injunction against Media Mix was thereafter granted on July 29, 2019. ECF #56. This emergent action was necessary to ensure that call records were preserved and produced. Plaintiffs' counsel thereafter pursued a Motion for Entry of Default against Media Mix, who had failed to appear. ECF #60-63. On September 10, 2019, Plaintiffs' counsel filed an additional Motion for a Temporary Restraining Order against Media Mix and its principals,

when it became apparent that Media Mix was ceasing operations, and there was a concern in regards to the potential destruction of crucial class evidence. ECF #64. Class counsel also engaged in litigation to thwart Media Mix's counsel from withdrawing from the litigation, and to obtain crucial additional discovery. *See* ECF 70, 71, 72, 74, 75, 76, 77, 78. *See* Exhibit 2, Declaration of Matthew P. McCue.

Armed with a sufficient understanding of the strengths and weaknesses of their case to enter into settlement negotiations, the parties proceeded to mediate initially with the Honorable Wayne Andersen (Ret.), and then a second full day mediation session with Honorable Morton Denlow (Ret.). *See* Ex 2, McCue Decl. The parties have now documented the attached proposed Settlement Agreement and request Court approval to notify class members of its terms.

**D.      Terms of the Settlement**

The terms of the Settlement are memorialized in the parties' Class Action Settlement Agreement, Ex. 1.[3]

**1.      The Proposed Settlement Class**

The "Settlement Class" is defined as all persons in the United States who, from September 1, 2018 to the date of preliminary approval, received from Sunrun, and/or from or on behalf of Media Mix, Resource Marketing Corporation ("RMC") and/or D&M Marketing, Inc. d/b/a Americor ("Americor") in an effort to generate a lead or customer for Sunrun (a) one or more calls (including text messages) on their cellphones placed via a dialing platform; and/or (b) at least two telemarketing calls (including text messages) during any 12-month period where their phone numbers appeared on the National Do Not Call Registry for at least 31 days

---

[3] Defined terms used in this motion are defined in the Class Action Settlement Agreement.

before the calls/texts. *See Ex 1 at* § 2.1.47. *See* Amended Complaint, ECF #36.[4] Based on

discovery obtained during this litigation, Plaintiffs' independent investigation, the collaborative

work of the Parties, and analysis of the call data, the Parties have identified approximately

275,000 class members. These consumers will receive notice via post-card. Potential class

members who with reasonable diligence could not be identified will receive publication notice.[5]

This Settlement Class is coextensive with and subsumes the proposed classes in the operative

complaint. *See* Ex 2, McCue Decl. The ultimate recovery to each class member will be

distributed on a *pro rata* basis. From past experience, and in accord with the Northern District's

Procedural Guidance for Class Action Settlements, §1(e) and (g) the Settlement Administrator

expects to receive claims from 20% of the consumers who receive post card notice of the

proposed Settlement, which would yield a per claim payout of $57.00. *See* Ex 2, McCue Decl.

This is an estimate only as the percentage of class members who actually submit a claim is

beyond the control of the Parties. *Id.*

---

[4] In accord with the Northern District's Procedural Guidance for Class Action Settlements, §1(a) and (c) the Parties can report that the proposed Settlement class matches the operative complaint. The Class Representatives assert violations of both §227(b) and §227(c) of the TCPA as well as a violations of CIPA. The Class Representatives claims match the claims being released via the Settlement Class. *See* Ex 2, McCue Decl.

[5] In accord with the Northern District's Procedural Guidance for Class Action Settlements, §3, the Parties and the Settlement Administrator will take steps to ensure that notice provided to class members via post card, publication notice, and web-site will be understandable, taking into account any special concerns about the education level or language needs of class members. As evidenced by Exhibits B, D, and F to the Settlement Agreement, the notice will include (1) contact information for consumers to answer questions, (2) the address for a web-site, maintained by the claims administrator, that has links to the notice, motions for approval and for attorneys' fees and any other important documents in the case; (3) instructions on how to access the case docket via PACER or in person at any of the court's locations. The notice will also state the date of the final approval hearing and clearly state that the date may change without further notice to the class. Class members will be advised to check the settlement website or the Court's PACER site to confirm that the date has not been changed. The notice distribution plan will be administered within a reasonable time after final approval. *See* Exhibit 3, Declaration of Carla Peak of KCC.

### 2.     The Released Claims

In exchange for the benefits provided by the Settlement, members of the class will release any legal claims that arise from the telemarketing calls made by or on behalf of Sunrun through the date of the Preliminary Approval Order. *See* Ex 1 at §2.1.42 and §8.2.

### 3.     The Settlement Fund and Allocation of the Settlement Fund

In accord with the Northern District's Procedural Guidance for Class Action Settlements, §1(f), the proposed Settlement requires Sunrun to pay $5,500,000 to distribute to participating class members and to pay the attorneys' fee award, service award, and settlement administration costs. Ex 1 at §4.1. After payment of the attorneys' fee award, service award, and settlement administration costs approved by the Court, the settlement fund will be distributed to all class members who submit timely and valid claim forms. *Id. at* §4.2. Recovery to all Settlement Class Members who file a valid claim shall be distributed on a *pro rata* and equal basis. Each Settlement Class Member shall be entitled to submit only one claim. Each Settlement Class Member who files an Approved Claim shall be paid, by a Benefit Check, a cash benefit (the "Cash Benefit") that shall be equal to the Total Class Member Benefits Payout divided by the total number of Approved Claims. *Id. at* §4.2.1. Class members will have 90 days from the Notice Date to submit a claim form. *Id. at* §2.1.8.[6] *See* Ex 2, McCue Decl.

Any class members who deposit or cash their recovery will receive another *pro rata* distribution from the common fund from class members who did not cash or deposit the first settlement check (unless the cost of doing so is administratively infeasible). *Id. at* §4.2.6. The Settlement is non-reversionary. *Id.* If funds remain due to uncashed checks, they will be

---

[6] The Notice Date is the date that is thirty days after the entry of the Preliminary Approval Order.

disbursed to the National Consumer Law Center, to the extent it is administratively infeasible to further distribute them to Settlement Class Members. *Id. at* §4.2.6. *See* Ex 2, McCue Decl.

### 4.   The Settlement Administrator and Settlement Administration Costs

The Plaintiffs have retained KCC as the Settlement Administrator, subject to Court approval. *Id. at* §2.1.46. KCC has extensive experience administering class action settlements, particularly under the TCPA. KCC estimates that the administration will be $478,000.00, although that estimate is dependent on the number of claims received. In accord with the Northern District's Procedural Guidance for Class Action Settlements, §2, Class Counsel can represent that KCC has extensive experience administering class action settlements in a cost efficient manner and has successfully worked with both Class Counsel and Defense Counsel on many prior occasions to administer TCPA class action settlements. Over the past two years, Class Counsel has worked with KCC to resolve eight other TCPA class actions. KCC was selected after a competitive bidding process, which sought bids from KCC and two other competent settlement administrators. The costs of notice are to be paid from the Settlement Fund. *See* Ex 2, McCue Decl. *See* Ex 3, Peak Decl.

### 5.   The Requested Fee Award

Class Counsel expect to request attorneys' fees of 33.3% of the Settlement Fund, or $1,831,500.00, plus reasonable expenses. Plaintiffs' counsel intend to submit a separate Motion for Attorneys' Fees and expenses and will post such a submission on the settlement web site for review by class members.

### 6.   The Requested Service Award

Plaintiffs will apply for service awards in the amount of $5,000 each, to be paid from the Settlement Fund, in recognition of their service to the class and in consideration for a release of Plaintiffs' individual claims. *See Ex 1 at* § 2.1.26, ¶5.2 and 5.3. Service awards are

"intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).

The Class Representatives in this case all devoted time that was essential to the successful litigation of this case through to this Settlement. Each of the Class Representatives dedicated substantial time to the development of the factual record and maintained involved throughout the litigation process. Plaintiffs' willingness to step forward and lead this litigation on behalf of the class, and the efforts Plaintiffs put forward to ensure this successful resolution, justify the requested service award.[7]

### 7.    The Cy Pres Recipient

If there is money left over following the initial distribution that is too small to be practicably distributed to class members, the parties propose that it go to the National Consumer Law Center, a nonprofit organization that works for consumer, including advocating against illegal telemarketing. *See* https://www.nclc.org/. *See* Ex 2, McCue Decl.

## III.    ARGUMENT AND AUTHORITY

In the Ninth Circuit, "there is an overriding public interest in settling and quieting litigation … particularly … in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the

---

[7] *See, e.g., Wellens v. Sankyo*, Case No. 3:13-cv-00581-WHO, 2016 WL 8115715, at *4 (N.D. Cal. Feb. 11, 2016) (awarding class representatives service awards of $25,000 each).

dispute." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (citation omitted).

Proposed class action settlements are not effective unless approved by the court. Fed. R. Civ. P. 23(e). The main purpose of the court's supervision of class action settlements is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Courts use a "two-step process" for the approval of class action settlements, in which courts "first 'determine[] whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 2212783, at *9 (N.D. Cal. May 17, 2017) (citation omitted).

When a case settles before class certification, the court must also determine whether the class satisfies the Rule 23 requirements for class certification. Because a settled case will not be tried, manageability considerations are not relevant. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

**A.** **The proposed Settlement Classes should be preliminarily certified.**

Plaintiffs requesting class certification must demonstrate "that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). The proposed Settlement Classes satisfy all of the Rule 23 requirements.

**1.** **The Settlement Classes satisfy the requirements of Rule 23(a).**

The Rule 23(a) requirements are numerosity, commonality, typicality and adequacy. Fed. R. Civ. P. 23(a). The proposed Settlement Classes include at least 275,000 consumers

which more than satisfies the numerosity requirement. *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when the class comprises 40 members or more).

The proposed Settlement Classes also satisfy the commonality requirement of Rule 23(a), which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The central questions in this case are whether Sunrun violated the TCPA in placing calls/sending text messages to the TCPA Class, and in the case of the CIPA Class, whether those calls were recorded in violation of CIPA. The answers to these questions turn on common evidence and can be fairly resolved for all class members at once. *See, Whitaker v. Bennett Law, PLLC,* No. 13-3145, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (finding that commonality was satisfied where the central issue was whether the defendant used an ATDS or prerecorded or artificial voice to make unsolicited calls).

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of other class members because they arise from the same course of alleged conduct: telemarketing calls placed to phones promoting Sunrun's goods and services. Plaintiffs and proposed member of the Settlement Classes Members all seek statutory damages under the TCPA and CIPA. In such circumstances, typicality is satisfied. *See, e.g.*, *Whitaker*, 2014 WL 5454398, at *5 (finding typicality satisfied because each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA").

Finally, to make the adequacy determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiffs have no conflicts of interest with the other proposed class members and have demonstrated their commitment to the class by actively participating in the litigation. Plaintiffs are represented by counsel who are experienced in litigating class action cases and TCPA claims in particular, and who have previously been appointed by the courts in TCPA cases. *See* Exhibit 2, Declaration of Matthew McCue; Exhibit 4, Declaration of Edward Broderick; Exhibit 5, Declaration of Anthony Paronich, and Exhibit 6, Declaration of Andrew Heidarpour.

### 2.    The Settlement Class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Both requirements are satisfied in this case. Common questions predominate over any questions affecting only individual members. The overarching common questions are whether Sunrun itself is vicariously liable for calls and texts made by third parties to DNC listed residential numbers or dialing with an ATDS, and/or CIPA by recording calls to California consumers without prior notification. These questions can be resolved using the same evidence for all class members and is exactly the kind of predominant common issue that makes certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule

23(b)(3) ….'" (citation omitted)). Because of the numerous common issues that typically predominate over individual issues, courts routinely certify TCPA claims. *See, e.g., Ikuseghan v. Multicare Health System*, No. C14-5539 BHS, 2015 WL 4600818, at *8 (W.D. Wash. July 29, 2015).

Class certification is also "superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Classwide resolution is the only practical method of addressing the alleged telemarketing violations at issue in this case. Class members with modest individual claims cannot economically to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

**B.      The proposed Settlement should be preliminarily approved.**

In the past, courts have focused only on whether the proposed agreement appears to be non-collusive, is free of "obvious deficiencies," and generally falls within the range of "possible" approval. *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007). More recently, courts have required a more fulsome consideration of the merits of a settlement at the preliminary approval stage. These courts apply the factors set forth by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), and *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575-76 (9th Cir. 2004), which are used by courts to determine whether a settlement is fair, adequate, and reasonable at the final approval stage.

Plaintiffs agree that a more exacting review is appropriate at preliminary approval and will address each of the factors outlined by the Ninth Circuit, all of which—with the exception of the reaction of Settlement Class Members, since they have yet to be notified—support preliminary approval of the Settlement.

### 1.    The Strength of Plaintiffs' case.

Plaintiffs believe they have a strong case for liability. *See* McCue Decl. But success was certainly not guaranteed. One risk faced by Plaintiffs was the question of whether the calling system used to make telemarketing calls to class members qualifies as an "Automatic Telephone Dialing System" under the TCPA. As an initial matter, on July 10, 2015, the FCC released an omnibus declaratory ruling clarifying numerous relevant issues affecting the TCPA, including definition of an ATDS under the statute[8]—which was overturned in part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Following the D.C. Circuit's decision in *ACA Int'l* courts have been split on what constitutes an ATDS under the TCPA. Recently, the United States Supreme Court granted *certiorari* to resolve that circuit split. *See Facebook, Inc. v. Duguid,* No. 19-511, 2020 U.S. LEXIS 3559 (July 9, 2020) (granting cert.). The Ninth Circuit's view, announced in *Marks v. Crunch*, 904 F.3d 1041 (9th Cir. 2018) is that to qualify as an ATDS a dialer need not generate the numbers that are going to be called. If the Supreme Court were to reject the reasoning of *Marks* in resolving the circuit split there was a real risk that no one in the TCPA Class would receive *anything. Id.*

Similarly, Plaintiffs' CIPA claims faced a significant challenge as well. On Dec. 20, 2019, the Court of Appeal in *Smith v. LoanMe, Inc.*, E069752, 2019 WL 6974386 (Cal. App. 4th Dist. Dec. 20, 2019) ruled, that Section 632.7 applies only to third party eavesdroppers who receive (or intercept) communications without all parties consent and does not prohibit the participants in a phone call from intentionally recording it. If the *Smith ruling* was adopted by the California Supreme Court, it could deal a fatal blow to the CIPA claims.

Finally, the allegedly illegal calls at issue were not made by Sunrun directly. Rather, they were made be telemarketing vendors working on Sunrun's behalf. In other words, this was

---

[8]  *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

not a case of direct liability. For Plaintiffs to hold Sunrun to account for calls made by third parties, they would have to prove that Sunrun was vicariously liable for the actions of its agents. *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (explaining factors to consider in assessing vicarious liability of a principal for acts of an agent). Although Plaintiffs were prepared to do so, the risks of holding Sunrun vicariously liable for the actions of its agents was significant. *See* McCue Decl. In light of these significant legal challenges, the Settlement reached here is an excellent result.

**2.      The risk, expense, complexity, and likely duration of further litigation.**

Plaintiffs faced multiple hurdles to clear before they could actually recover damages through further litigation. Plaintiffs would not only have to prevail at trial, but also retain any favorable judgment through the appellate process. It is because almost all class actions involve a high level of risk, expense, and complexity that judicial policy so strongly favors resolving class actions through settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Litigating this case to trial and through any appeals would be expensive and time-consuming and would present risk to both parties. The Settlement, by contrast, provides prompt and certain relief for Settlement Class Members.

**3.      The risk of maintaining class action status through trial.**

Certification of this case was not a certainty, and even if it was granted an appeal under Fed. R. Civ. P. 23(f) would be sure to follow. This counsels in favor of preliminary approval. *See Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014).

**4.      The amount offered in Settlement.**

Sunrun has agreed to pay $5.5 million to settle class members' claims. Each participating Member of the Settlement Classes will receive an equal cash payment. Based on

their experience with claims rates in TCPA and other class settlements, Plaintiffs' Counsel and

the proposed Settlement Administrator estimate that each participating Settlement Class

Member will receive approximately $57.00, if it is assumed that 20 percent of class members

who receive actual notice file valid claims. *See* McCue Decl. The final amount could be higher

or lower depending on the number of claims. The current proposed Settlement is reasonable

and of fair value given the significant litigation risks Plaintiffs faced in continuing to litigate.

Of course, class members who are unsatisfied with the expected claim amount are free to opt

out and pursue their individual claims. The Settlement amount is comparable with other TCPA

settlements approved in California and across the country.[9]

### 5.    The extent of discovery completed and the stage of proceedings.

For this factor, courts look to whether the parties have sufficient information to make an

informed decision with respect to the settlement. *See In re Mego Fin. Corp. Sec. Litig*., 213

F.3d 454, 459 (9th Cir. 2000). Here, the parties engaged in extensive litigation and fulsome

discovery prior to proceeding to mediation which placed them in a sufficient position to make

an informed decision with respect to settlement. *See* Ex. 2, McCue Decl.

### 6.    The experience and views of counsel.

Class Counsel have extensive experience litigating and settling class actions, and TCPA

class actions in particular, and all believe the Settlement represents an excellent result for the

class and merits preliminary approval. *See* Declarations of Counsel at Ex 2, 4-6. The

---

[9] *In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (approving settlement where each class member received $34.60 per claimant); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each).

recommendation of experienced counsel weighs in favor of granting final approval and creates a presumption of reasonableness. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." (citation omitted)); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (citing counsel's experience and recommendation as weighing in favor of approval). The fact that qualified and well-informed counsel endorse the settlement as being fair, reasonable, and adequate weighs heavily in favor of approval.

### 7.     The presence of a governmental participant.

While no governmental entity is a party to this litigation, notice will be issued to the Attorney General of the United States and Attorneys General of each of the States in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715, and given an opportunity to raise any objections or concerns they may have.

### 8.     The reaction of Settlement Class Members to the proposed Settlement.

The Settlement Class Members have not yet had an opportunity to react to the proposed Settlement because they have not been notified of it. Plaintiffs will provide the Court with information about Settlement Class Members' reaction in their motion for final approval of the Settlement.

### 9.     Lack of collusion among the parties.

This case has been hard fought since the beginning. The parties were at all times adversarial, including during settlement discussions. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8

(N.D. Cal. Apr. 29, 2011) (citation omitted); *see also Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Ninth Circuit has identified "red flags" that may suggest that plaintiffs' counsel allowed pursuit of their own self-interest to infect settlement negotiations: (1) when counsel receive a disproportionate portion of the settlement; (2) when the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; and (3) when the parties agree that any fees not awarded will revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). None of these warning signs are present in this case.

**C.     Plaintiffs' attorneys' fees are reasonable.**

Class Counsel intend to seek an award of 33.3% of the Settlement Fund in reasonable attorneys' fees, as well as reimbursement for out-of-pocket costs they have incurred prosecuting this action. The worked performed by Class Counsel was on a purely contingency basis without guarantee of payment. Class Counsel will also seek litigation expenses. The attorneys' fees and costs Class Counsel will seek are reasonable under the circumstances of this case. *See In re Bluetooth*, 654 F.3d at 941 (requiring that any attorneys' fee awarded be reasonable). Class Counsel will file a fee petition consistent explaining that no reason exists to depart from the benchmark here. The fee motion will be posted to the settlement web-site for review and comment by class members.

**D.     The Service Awards are reasonable.**

Service awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding incentive award must not "corrupt the settlement by undermining the adequacy of the class representatives and class counsel"). Here, Plaintiffs

will request a Service Award of $5,000 each. Ex 1, Settlement § 5.1 and 5.2. Service Awards of $5,000 are reasonable and in line with awards approved by federal courts in California and elsewhere.[10]

**E.     The proposed Notice Plan should be approved.**

The federal rules provide that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The parties have agreed on a Notice Plan that will provide Settlement Class Members with direct mail, email, or publication notice that describes the Settlement and Settlement Class Members' rights in plain English, and a Settlement Website and a toll-free number to obtain more information. Notice will be set forth in easily understandable and will take into account the educational level and language needs of class members. The notice will include contact information for questions, links to a web-site that will contain the notice and key motions relating to the Settlement, and instructions on how to access the case docket via PACER, or in person at the courthouse. The notice will state that the date of the final approval hearing and clearly states such date could change without notice. The Notice Plan satisfies the requirements of Rule 23 and due process. *See* Exhibit 3, Notice Declaration of Carla Peak of KCC; Ex 2, McCue Decl. The Settlement Administrator has been provided with the contact information of approximately 275,000 Settlement Class Members. KCC has designed a Notice Program that includes direct notice by email or postcard to the identified Settlement Class Members and robust Publication

---

[10] *See, e.g., In re Nat'l Collegiate Athletic Ass'n*, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 incentive awards to each of four class representatives and collecting cases approving similar awards); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329–30 & n.9 (W.D. Wash. 2009) (collecting decisions approving awards ranging from $5,000 to $40,000); *Sykes v. Mel Harris & Assoc., LLC*, 09 Civ. 8486 (DC), 2016 WL 3030156, at *18 (S.D.N.Y. May 24, 2016) (approving $30,000 incentive awards); *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425 at *3 (N.D. Ga. Jan. 30, 2017) (approving $20,000 service awards).

Notice to ensure that any unidentified Settlement Class Members are also notified. Given the circumstances, KCC's designed plan is the best practicable notice. *See Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving a similar postcard notice plan).

The proposed postcard notice, together with the website and the publication plan are "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and also describe "the action and the plaintiffs' rights in it." *Hawthorne v. Umpqua Bank*, No. 11-cv-6700-JST, 2014 WL 4602572, at *6 (N.D. Cal. Sept. 15, 2014) (quoting *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

**F.      The schedule for final approval.**

The parties propose the following schedule for final approval of the Settlement:

| Event | Date |
|---|---|
| Notice Date | 30 days after entry of Preliminary Approval Order |
| Class Counsel to file motion for attorneys' fees | 30 after entry of Preliminary Approval Order |
| Deadline for Settlement Class Members to file claims, object, and request exclusion | 90 days after the Notice Date |
| Class Counsel to file motion for final approval and response to objections | 14 days before Final Approval Hearing |
| Final Approval Hearing | No sooner than May 3, 2021 |

## IV.      CONCLUSION

Plaintiffs request that the Court enter an order that: (1) certifying the proposed Settlement Class for settlement purposes only; (2) granting preliminary approval of the

proposed Settlement; (3) directing notice to be disseminated to Settlement Class Members in the form and manner proposed by the parties; (4) appointing the undersigned as Class Counsel, (5) appointing KCC to serve as the Settlement Administrator; and (6) set a schedule and hearing date for final approval of the Settlement and related deadlines.

RESPECTFULLY SUBMITTED on August 26, 2020.


By: */s/ Matthew P. McCue*
Matthew P. McCue

Anthony I. Paronich, *Admitted Pro Hac Vice*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

Edward A. Broderick, *Admitted Pro Hac Vice*
ted@broderick-law.com
BRODERICK LAW,  P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Matthew P. McCue, *Admitted Pro Hac Vice*
mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Andrew W. Heidarpour, *Admitted Pro Hac Vice*
AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

*Attorneys for Plaintiffs William Loftus, Sidney Naiman, and Louis Naiman, and the Proposed Classes*

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on August 26, 2020, I served the foregoing through the Court's

3

CM/ECF system, which sent notice to all counsel of record.

4

                    By: _/s/ Matthew P. McCue_

5

                      Matthew P. McCue

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28