Edward A. Broderick (*pro hac vice*)
ted@broderick-law.com
Broderick Law, P.C.
176 Federal Street, Fifth Floor
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

*Attorneys for Plaintiffs William Loftus, Sidney Naiman, and Louis Naiman, and the Settlement Classes* (additional counsel appear on signature page)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LOFTUS, SIDNEY NAIMAN, and LOUIS NAIMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUNRUN INC., and MEDIA MIX 365, LLC, and DOES 1-10,<br><br>Defendants. | Case No. 3:19-cv-01608-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: May 6, 2021<br>Hearing Time: 1:30 p.m.<br>Courtroom: 3 – 17th Floor<br>Judge: Hon. Richard Seeborg |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 6, 2021 at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 3 – 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Richard Seeborg, William Loftus, Sidney Naiman and Louis Naiman (collectively "Plaintiffs") will and hereby do move the Court, by and through

Class Counsel, for entry of an order granting final approval of the class action settlement. The basis for this Motion is that the settlement represents an excellent recovery for class members based on the circumstances of the case and the recovery for the Settlement Class.[1] This Motion is supported by this Notice of Motion, the following Memorandum of Points and Authorities, all pleadings, records, and papers on file, and such other matters that may be presented to the Court. This Motion is unopposed by the defendants SunRun, Inc. ("SunRun") and Media Mix 365, LLC. ("Media Mix" collectively "Defendants").

    Date: April 16, 2021

---

[1] The Class Action Settlement Agreement, was filed with the Court as docket entry number 104-1 on August 27, 2020, (referred to herein as the "Agreement" or "Settlement Agreement"). All capitalized terms used herein have the same definitions as those defined in the Agreement.

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................ 1

II.    ISSUE TO BE DECIDED ...................................................... 2

III.   BACKGROUND ................................................................ 2

    A.    Statutory Background of Plaintiffs' Claims.......................... 2

    B.    Plaintiffs' Allegations ............................................ 3

    C.    The Litigation and Settlement Negotiations ........................ 3

    D.    Terms of the Settlement ............................................ 5

IV.    IMPLEMENTATION OF THE PROPOSED SETTLEMENT .................... 6

V.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE................ 8

    A.    The Settlement is Entitled to a Presumption of Fairness, and Is Otherwise Fair, Reasonable, and Adequate.................................. 9

        1.    The Strength of Plaintiffs' Case Compared to the Risks of Further Litigation Supports Final Approval ........................ 10

        2.    The Risks of Maintaining Class Action Status Through Trial Support Final Approval ........................................ 12

        3.    The Monetary Relief Provided by the Settlement Support Final Approval ........................................................ 13

        4.    Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case .................................. 14

        5.    Class Counsels' Experience and Views of the Settlement Support Final Approval .............................................. 15

        6.    The Reaction of the Settlement Class Members Supports Final Approval ........................................................ 16

    B.    Notice Was the Best Practicable and Was Reasonably Calculated to Inform the Settlement Class of its Rights ............................ 16

    C.    The Settlement Class Should Be Finally Certified ................... 17

VI.    CONCLUSION ................................................................ 18

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Campbell-Ewald Co. v. Gomez*,
 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ......................................................3, 11

*Couser v. Comenity Bank*,
 125 F. Supp. 3d 1034 (S.D. Cal. 2015)...............................................................10

*Creasy v. Charter Communs., Inc.*,
 No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sept. 28, 2020)..................5

*Estrada v. iYogi, Inc.*,
 No. 2:13–01989 WBS CKD, 2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct.
 6, 2015) .................................................................................................................13

*Facebook, Inc. v. Duguid*,
 No. 19-511, 2021 U.S. LEXIS 1742 (Apr. 1, 2021) .............................................11

*Franklin v. Wells Fargo Bank, N.A.*,
 No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29,
 2016) .....................................................................................................................13

*Golan v. FreeEats.com, Inc*,
 930 F.3d 950 (8th Cir. 2019) ...............................................................................12

*Goodwin v. Winn Mgmt. Grp. LLC*,
 No. 115CV00606DADEPG, 2017 U.S. Dist. LEXIS 117133 (E.D. Cal. July
 26, 2017) .................................................................................................................9

*Jones v. Royal Administration*,
 887 F.3d 443 (9th Cir. 2018) ...............................................................................11

*Kuck v. Berkey Photo, Inc.*,
 87 F.R.D. 75 (S.D.N.Y. 1980) ..............................................................................15

*In re LinkedIn User Privacy Litig.*,
 309 F.R.D. 573 (N.D. Cal. 2015)..........................................................................16

*Manouchehri v. Styles for Less, Inc.*,
 No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. June 20, 2016).......13

ii

*McCurley v. Royal Sea Cruises, Inc.*,
    No. 17-cv-00986-BAS-AGS, 2021 U.S. Dist. LEXIS 17619 (S.D. Cal. Jan.
    28, 2021) ...................................................................................................................12

*McDermet v. Trinity Heating & Air, Inc.*,
    Civil Action No. 17-10566, 2018 U.S. Dist. LEXIS 22229 (D. Mass. Feb. 12,
    2018) ..........................................................................................................................2

*Morales v. Stevco, Inc.*,
    No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov.
    10, 2011) ..............................................................................................................12, 13

*Morgan v. U.S. Xpress, Inc.*,
    No. 3:17-CV-00085, 2018 WL 3580775 (W.D. Va. July 25, 2018) ........................11

*Moshogiannis v. Sec. Consultants Grp., Inc.*,
    No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287 (N.D. Cal. Feb. 8,
    2012) ........................................................................................................................14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................................................................17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004 ) .......................................................................15, 16

*Officers for Justice v. Civil Serv. Com.*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................................10

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .....................................................................................9

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................................9, 10

*Satchell v. Fed. Express Corp.*,
    No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007)............9

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008 ) ..................................................................................8

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................13

*Tomeo v. CitiGroup, Inc.*,
    No. 13 C 4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018)................................12

iii

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ...................................................................................9

*Twigg v. Sears, Roebuck & Co.*,
  153 F.3d 1222 (11th Cir. 1998) .................................................................................17

*Wannemacher v. Carrington Mortg. Servs., LLC*,
  No. SA CV 12-2016 FMO, 2014 U.S. Dist. LEXIS 199156 (C.D. Cal. Dec. 22, 2014) ....................................................................................................10, 12

*Williams v. Costco Wholesale Corp.*,
  No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ..............................................................................................................14

**Other State Cases**

*Facebook, Inc. v. Duguid*,
  No. 19-511 ...................................................................................................................5

**Federal Statutes**

28 U.S.C.
  § 1715 .........................................................................................................................7

47 U.S.C.
  § 227(b)(1) ...................................................................................................................2
  § 227(c) .....................................................................................................................2, 3
  § 227(c)(5) ...................................................................................................................2

**California Statutes**

California Penal Code
  § 632.7 .........................................................................................................................3

**Other Authorities**

47 C.F.R. § 64.1200(c)(2) ................................................................................................2

Fed. R. Civ. P. 23(a) ..................................................................................................17, 18

Fed. R. Civ. P. 23(b) .......................................................................................................17

Fed. R. Civ. P. 23(b)(1) ...................................................................................................16

Fed. R. Civ. P. 23(b)(2) ...................................................................................................16

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

Fed. R. Civ. P. 23(b)(3) ...................................................................................................18

Fed. R. Civ. P. 23(e) .......................................................................................................18

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................16

*Manual for Compl. Lit.* § 21.312 .............................................................................16, 17

*Newberg on Class Actions* § 11.41 (4th ed. 2002) .........................................................8

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

As explained in Plaintiffs' preliminary approval papers and further herein, the Settlement Agreement provides exceptional relief to the Settlement Class. The Settlement Agreement establishes a non-reversionary Settlement Fund in the amount of $5,500,000 for the benefit of the Settlement Class, which will also be used to pay the settlement costs. Based on the current claims rate, this equates to at least $104.99 per Settlement Class Member per valid claim, with some class members who received calls on multiple phone numbers receiving $209.98. *See* Declaration of Jay Geraci at ¶ 17, attached hereto as Exhibit 1.[2]

No Settlement Class Members have objected and only thirteen class members have opted out. *Id.* at ¶¶ 15-16. Due to the robust notice efforts, 29,449 Settlement Class Members have submitted valid claims—a claims rate of more than 10%.

Ultimately, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled legal questions, provides Class Members with outstanding relief, and should be finally approved.

Therefore, for the reasons set forth in this memorandum and in the papers previously submitted in support of approval, Plaintiffs respectfully request that the Court grant final approval of the Parties' Settlement Agreement by: (1) finally certifying the Settlement Class; (2) approving the proposed Settlement Agreement as fair, reasonable, and adequate for the certified Settlement Class; (3) determining that adequate notice was provided to the Settlement Class; and

---

[2] This estimate is based on a pro rata distribution after deduction of the anticipated settlement administration costs, requested service award, litigation expenses and requested attorneys' fees of one-third of the Settlement Fund. *Id.*

1

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

1    (4) approving payment to the claims administrator estimated not to exceed $515,000. The Parties

2    request entry of the agreed proposed order filed herewith, attached as Exhibit 2 to this Motion, at

3    or after the fairness hearing.

4    **II.    ISSUE TO BE DECIDED**

5          Whether the settlement should be approved as fair, reasonable, and adequate and whether

6    the Settlement Class should be finally certified for settlement purposes.

7

8    **III.    BACKGROUND**

9          **A.    Statutory Background of Plaintiffs' Claims**

10         The TCPA, 47 U.S.C. §227(c) prohibits telemarketing to residential telephone lines

11   registered on the National Do Not Call Registry ("DNC" or the "Registry"). The DNC allows

12   consumers to register their personal telephone numbers and thereby indicate their desire not to

13   receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). The TCPA and

14   implementing regulations prohibit the initiation of telephone solicitations to residential telephone

15   subscribers to the Registry and provides a private right of action against any entity that makes

16   those calls, or "on whose behalf" such calls are promoted. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. §

17   64.1200(c)(2). Section 227(b) of the TCPA further renders it unlawful "to make any call (other

18   than a call made for emergency purposes or made with the prior express consent of the called

19   party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to

20   any telephone number assigned to a . . . cellular telephone service . . . or any service for which

21   the called party is charged for the call." 47 U.S.C. § 227(b)(1). The FCC has reasonably

22   interpreted 'call' under the TCPA to encompass both voice calls and text calls." *McDermet v.*

23   *Trinity Heating & Air, Inc.,* Civil Action No. 17-10566, 2018 U.S. Dist. LEXIS 22229, at *11

2

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

(D. Mass. Feb. 12, 2018) *citing Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009). *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016) ("It is undisputed that a text message to a cellular telephone is a covered "call" under the TCPA.") Finally, California Penal Code § 632.7 prohibits one party to a telephone call from intentionally recording the conversation without the knowledge or consent of the other while the person being recorded is on a cellular telephone. Penal Code § 632.7 is violated the moment the recording is made without the consent of all parties thereto, regardless of whether it is subsequently disclosed.

### B.    Plaintiffs' Allegations

Plaintiffs originally filed suit against Sunrun on March 27, 2019. ECF #1. After extensive investigation, Plaintiffs filed an Amended Complaint on June 26, 2019. ECF #36. The Amended Complaint alleged that Mr. Loftus received illegal telemarketing solicitations from Sunrun in violation of the TCPA on his residential line registered on the DNC in violation of 47 U.S.C. §227(c). *Id.* at ¶79-101. The Amended Complaint further alleged that the solicitations to Mr. Loftus were also in violation of CIPA. *Id.* The Amended Complaint also alleged that Sidney Naiman and Louis Naiman received illegal telemarketing solicitations from Sunrun in violation of the TCPA. *Id.* at ¶102-139.

### C.    The Litigation and Settlement Negotiations

Immediately upon filing the original Complaint, Plaintiffs began an intensive investigation into Sunrun's, and Media Mix's telemarketing practices. On June 29, 2019, Plaintiffs filed against Media Mix a Motion for a Temporary Restraining Order, and submitted extensive declarations and evidence in support. ECF #39-1. A Temporary Restraining Order was

3

issued by this Court on July 2, 2019, which ordered Media Mix, a vendor that offered leads to Sunrun, to preserve all evidence as to telemarketing conducted "on behalf of" Sunrun. ECF #41. A Preliminary Injunction against Media Mix was thereafter granted on July 29, 2019. ECF #56. This emergent action was necessary to ensure that call records were preserved and produced. Plaintiffs' counsel thereafter pursued a Motion for Entry of Default against Media Mix, who had failed to appear. ECF #60-63. On September 10, 2019, Plaintiffs' counsel filed an additional Motion for a Temporary Restraining Order against Media Mix and its principals, when it became apparent that Media Mix was ceasing operations, and there was a concern about the potential destruction of crucial class evidence. ECF #64. Class counsel also engaged in motion practice to prevent Media Mix's counsel from withdrawing from the litigation, and to obtain crucial additional discovery. *See* ECF 70, 71, 72, 74, 75, 76, 77, 78. The Plaintiffs also served over a dozen third party subpoenas regarding the automated dialing equipment and records of calls made to the putative class. *See* ECF No. 112-1, Declaration of Edward Broderick ("Broderick Decl.") at ¶ 4. Furthermore, the Plaintiffs issued first party discovery regarding the potential vicarious liability of Sunrun that resulted in the production of thousands of pages of documents. *Id.*

Armed with a sufficient understanding of the strengths and weaknesses of their case to enter into settlement negotiations, the parties proceeded to mediate initially with the Honorable Wayne Andersen (Ret.), and then a second full day mediation session with the Honorable Morton Denlow (Ret.). *Id* ¶ 5.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potentially

4

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

appeals. *Broderick Decl*. ¶ 6. Plaintiffs' counsel have taken into account the strength of

Defendants' defenses, the limitations of Defendants' financial ability to pay a potential final

judgment, difficulties in obtaining class certification and proving liability, the uncertain outcome

and risk of the litigation, especially in complex actions such as this one, the inherent delays in

such litigation, and particularly the risk that a change in the law, including a ruling by the

Supreme Court or this Court concerning the constitutionality of the TCPA or an interpretation

from the Supreme Court or Federal Communications Commission regarding what constitutes an

autodialer under the TCPA, could nullify Plaintiffs' claims. *Id.*; *see Facebook, Inc. v. Duguid*,

No. 19-511 ; *Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798

(E.D. La. Sept. 28, 2020) . Plaintiffs' counsel believes that the proposed Settlement confers

substantial and immediate benefits upon the Settlement Class whereas continued and protracted

litigation, even if successful, may have ultimately delivered none. *Id*. Based on their evaluation

of all these factors, Plaintiffs and their counsel believe the Settlement is in the best interests of

Plaintiffs and the Settlement Class. *Broderick Decl*. ¶ 11.

### D.    Terms of the Settlement

The "Settlement Class" is defined as all persons in the United States who, from

September 1, 2018 to the date of preliminary approval (September 25, 2020), received from

Sunrun, and/or from or on behalf of Media Mix, Resource Marketing Corporation ("RMC")

and/or D&M Marketing, Inc. d/b/a Americor ("Americor") in an effort to generate a lead or

customer for Sunrun (a) one or more calls (including text messages) on their cellphones placed

via a dialing platform; and/or (b) at least two telemarketing calls (including text messages)

during any 12-month period where their phone numbers appeared on the National Do Not Call

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

Registry for at least 31 days before the calls/texts. *See Ex 1 at* § 2.1.47. *See Amended Complaint*, ECF 36.

In accord with the Northern District's Procedural Guidance for Class Action Settlements, §1(a) and (c) the Parties can report that the proposed Settlement class matches the operative complaint. The Class Representatives assert violations of both §227(b) and §227(c) of the TCPA as well as violations of CIPA. The Class Representatives claims match the claims being released via the Settlement Class. The Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation may have ultimately delivered none given the risks presented by Defendants' defenses, the uncertainties of contested litigation, and the everchanging TCPA landscape, including district courts' ongoing scrutiny of the constitutionality of the TCPA, and the Supreme Court's and FCC's pending decisions regarding the TCPA's autodialer provision. *See Broderick Decl*. at ¶ 7-11.

Plaintiffs filed their unopposed motion for preliminary approval of the proposed Settlement on August 27, 2020. ECF 104. On September 25, 2020, as directed by the Court, Plaintiffs filed a revised proposed preliminary approval order with dates for deadlines inserted, which was approved by the Court that same day. ECF, 107, 108.

## IV.    IMPLEMENTATION OF THE PROPOSED SETTLEMENT

The Court entered its Order Granting Preliminary Approval of the Settlement on September 25, 2020. ECF #108. Both before and after that date, the Parties worked diligently with each other and KCC Class Action Services ("KCC" or "Settlement Administrator"), to effectuate the terms of the Settlement Agreement.

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

Specifically, on September 1, 2020, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715   ("CAFA "), the Settlement Administrator sent the CAFA Notice to the United States Attorney General and all State Attorneys General. Geraci Decl. at ¶ 3.

On October 2, 2020, counsel provided the Settlement Administrator with electronic files containing potential Settlement Class Member records. *Id.* at ¶ 5. There were 255,002 unique known settlement class members. *Id.* at ¶ 7. The files included names, addresses, Phone Numbers and email addresses, although 14,880 of these records only contained a telephone number. *Id.* On or around October 8, 2020, KCC hired two vendors to conduct reverse directory searches for the 14,880 phone numbers on the Class List that lacked a name or mailing address, in an effort to find a name and address. *Id.* at ¶ 8. As a result, KCC received 13,440 names and addresses, and on October 30, 2020, the individuals were sent first class mail notice. *Id.* ¶ 9. Since mailing the Notice Packets to the Class Members, KCC has received 1,047 Notice Packets returned by the USPS with forwarding addresses, which KCC immediately caused Notice Packets to be re-mailed to the forwarding addresses supplied by the USPS. *Id.* Since mailing the Notice Packets to the Class Members, KCC has received 8,237 Notice Packets returned by the USPS with undeliverable addresses, and KCC performed address searches for these undeliverable Notice Packets and was able to find updated addresses for 1,175 Class Members. KCC promptly re-mailed Notice Packets to the found new addresses. In total, 96.7% of known Settlement Class Members have received direct notice.

Additionally, the parties implemented the publication notice required by the Court's Preliminary Approval Order. KCC purchased 323,000,000 million impressions to be distributed via the Google Display Network, Oath Advertising Network, and the social media platform

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Facebook. *Id.* at ¶ 11 The impressions were targeted to adults 18 years of age and older nationwide. The impressions appeared on mobile and desktop devices from October 30, 2020 through December 29, 2020. *Id.*. On October 28, 2020, KCC launched the Settlement website and the toll-free Settlement information hotline. *Id.* at ¶ 12. Since that time, there have been 153,951 unique visits to the Settlement website and 1,925 calls to the toll-free Settlement information hotline. *Id.* at ¶¶ 12,13.

And in response to these robust notice efforts, 29,449 Settlement Class Members have submitted claims, no potential Settlement Class Members have objected, and only 13 Settlement Class members have opted out. *Id.* at ¶¶ 14-16.

## V.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. The policy favoring settlement is especially relevant in class actions in which the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain through a judgment. *See*, *e.g.*, *id.*; *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008 ) ; *see also Newberg on Class Actions* § 11.41 (4th ed. 2002)  (citing cases).

In the Ninth Circuit, to assess the fairness of a class-action settlement there are eight factors a court may consider: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the relief provided by the settlement; (5) the extent of discovery completed and the stage of the proceedings at which a settlement was reached; (6) plaintiffs'

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

counsels' views of the case in light of their experience; (7) the presence of a governmental participant; and (8) the reaction of the absent members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) . In assessing a settlement, a court is asked to exercise its discretion only "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) . An evaluation of the relevant factors for determining whether the Parties' Settlement here is fair, reasonable, and adequate, overwhelmingly supports the granting of final approval.

> **A.    The Settlement is Entitled to a Presumption of Fairness, and Is Otherwise Fair, Reasonable, and Adequate**

"The assistance of an experienced mediator in the settlement process confirms that [a] settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ; *see Goodwin v. Winn Mgmt. Grp. LLC*, No. 115CV00606DADEPG, 2017 U.S. Dist. LEXIS 117133, at *20 (E.D. Cal. July 26, 2017) (finding that a settlement was entitled to a presumption of fairness because it resulted from a full day of mediation with a mediator); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) (citing *Rodriguez*, 563 F.3d at 965) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Settlement in this action is the result of protracted settlement negotiations with the assistance of two JAMS mediators, Honorable Wayne Andersen (Ret.), and then a second full day mediation session with Honorable Morton Denlow (Ret.). both of whom have extensive

9

1  experience assisting parties in resolving TCPA class actions. Broderick Decl. at ¶ 5. The

2  Settlement is therefore entitled to a presumption of fairness. But, even without a presumption of

3  fairness, an objective evaluation of the relevant Ninth Circuit factors for determining whether the

4  Settlement is fair, reasonable, and adequate confirms that it is overwhelmingly so. *See*

5  *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SA CV 12-2016 FMO (ANx), 2014 U.S.

6  Dist. LEXIS 199156, at *16 (C.D. Cal. Dec. 22, 2014)  (discussing that a court should

7  "objectively" evaluate the "strengths and weaknesses inherent in the litigation") (internal citation

8  omitted).

9

10

11        **1.    The Strength of Plaintiffs' Case Compared to the Risks of
            Further Litigation Supports Final Approval**

12        As the Ninth Circuit has instructed, in assessing the probability and likelihood of success,

13  "the district court's determination is nothing more than an amalgam of delicate balancing, gross

14  approximations, and rough justice." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625

15  (9th Cir. 1982) . There is "no particular formula" to be applied, but the court may presume the

16  parties' counsel and the mediator arrived at a reasonable range of settlement by considering

17  plaintiff's likelihood of recovery. *Rodriguez*, 563 F.3d  at 965. Moreover, "[i]t has been held

18  proper to take the bird in hand instead of a prospective flock in the bush." *Couser v. Comenity*

19  *Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015)  (*citing Nat'l Rural Telecomms. Coop. v.*

20  *DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004 )).

21

22        Class Counsel have taken into account the strength of Defendants' defenses, the

23  difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of

24  the litigation, especially in complex actions such as this one, the inherent delays in such

25  litigation, and particularly the risk that a change in the law, including a ruling by the Supreme

26

27

28

10

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

1    Court or this Court concerning the constitutionality of the TCPA or an interpretation from the

2    Supreme Court or Federal Communications Commission regarding what constitutes an

3    autodialer under the TCPA, could nullify Plaintiffs' claims.

4        The question of whether the dialing system used was an "Automatic Telephone Dialing

5    System" was decided by the Supreme Court on April 1, 2021 and will make such a claim

6    substantially more difficult to litigate. *Facebook, Inc. v. Duguid*, No. 19-511, 2021 U.S. LEXIS

7    1742 (Apr. 1, 2021). Furthermore, whether cellular telephones are properly subject to the

8    TCPA's Do Not Call provision is an often-litigated issue. *See e.g. Morgan v. U.S. Xpress, Inc.,*

9    No. 3:17-CV-00085, 2018 WL 3580775, at *2–3 (W.D. Va. July 25, 2018) (granting motion to

10   dismiss because Plaintiff has failed to plausibly allege the calls were made to a "residential

11   telephone line" within the meaning of the relevant section of the TCPA holding "It would be odd

12   if a cell phone, largely used outside the home and at work, became a residential line just because

13   it was brought home and thereby erased those statutory categories")

14       Furthermore, with respect to all class members, SunRun has maintained that the calls

15   were all made by their vendors, and any calls that would have violated the TCPA are breaches of

16   those vendors' contractual obligations. The Supreme Court in *Campbell-Ewald Co. v. Gomez*,

17   136 S. Ct. 663 (2016), held traditional agency and vicarious liability principles are required in

18   order to be found liable under the TCPA, and several TCPA cases have been dismissed for

19   failure to establish a defendant's knowledge of a vendor's illegal conduct. *See e.g. Jones v. Royal*

20   *Administration*, 887 F.3d 443 (9th Cir. 2018). Indeed, TCPA cases have been certified and have

21   had summary judgment granted in favor of the class on vicarious liability issues. *See e.g.*

11

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

*McCurley v. Royal Sea Cruises, Inc.,* No. 17-cv-00986-BAS-AGS, 2021 U.S. Dist. LEXIS 17619 (S.D. Cal. Jan. 28, 2021).

Class certification is also far from automatic in TCPA cases. *See e.g. Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation). In addition, at least some courts view awards of aggregate, statutory damages under the TCPA with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See e.g., Golan v. FreeEats.com*, *Inc*, 930 F.3d 950 (8th Cir. 2019) (Reducing TCPA statutory damages in class action to $10 per call).

These risks must be balanced against the strong anticipated Settlement result: if the Settlement is finally approved there will be a minimum recovery of $104.99 per claiming Settlement Class Member, with some class members who received calls on multiple phone numbers of theirs receiving $209.98. This factor therefore weighs in favor of final approval. *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604, at *27 (E.D. Cal. Nov. 10, 2011)  (immediate recovery for the class is "preferable to lengthy and expensive litigation with uncertain results") (internal citation omitted).

### 2.    The Risks of Maintaining Class Action Status Through Trial Support Final Approval

The risk that a class may not be certified also favors final approval. *See Wannemacher*, 2014 U.S. Dist. LEXIS 199156, at *18 (finding that where motion for class certification had not been filed the risk that the class would not be certified weighed in favor of approving the settlement). If litigation had continued, Defendant would have argued that consent and other defenses could not be determined on a class basis, and that, therefore, class certification would

12

be inappropriate. The risks inherent in proceeding with class litigation weigh strongly in favor of final approval.

### 3.    The Monetary Relief Provided by the Settlement Support Final Approval

In evaluating the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) . "Thus, when analyzing the amount offered in settlement, the Court should examine 'the complete package taken as a whole,' and the amount is 'not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'" *Morales*, 2011 U.S. Dist. LEXIS 130604 , at *28.

The non-reversionary $5,500,000 settlement amount provides much more than "a fraction of the potential recovery" to Settlement Class Members. For the nearly 30,00 valid claimants, a minimum recovery of $104.99 per claiming Settlement Class Member, with some class members who received calls on multiple phone numbers of theirs receiving $209.98. This is an excellent result that far exceeds the payout in many other court approved TCPA settlements. *See Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.,* No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where class members estimated to receive $40).

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

The monetary and remedial relief here are a fair and meaningful outcome in Settlement Class Members' favor, and places the Settlement well within the range of approval.

### 4.    Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case

Discovery has advanced far enough to allow parties to responsibly resolve a case where the parties have exchanged meaningful evidence and information relating to the key issues in the case prior to settlement negotiations. *E.g.*, *Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Feb. 8, 2012) (holding that settlement was fair, reasonable, and adequate where, *inter alia*, "the parties conducted a significant amount of informal discovery…"); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement.").

Here, the efforts to date also include extensive discovery involving, among other things, a motion to compel against Defendant Media Mix 365, LLC. More specifically, as part of discovery, each party served, responded to, and produced documents responsive to discovery requests. Plaintiffs also engaged in extensive third-party discovery, resulting in securing calling records which were essential to the case. Class Counsel also successfully moved for a preliminary injunction. Class Counsels' understanding of the key issues driving the litigation, including the likelihood of class certification, the strength of Defendants' consent and other defenses, and the ever-shifting TCPA law landscape, prepared them for well-informed settlement negotiations. As a result, the Settlement here was the result of extensive, arm's-length

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.

### 5. Class Counsels' Experience and Views of the Settlement Support Final Approval

Settlement recommendations of competent counsel are accorded "great weight" by the Courts since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (citations omitted). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980) .

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Broderick Decl. at ¶¶ 3-11. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. *Id*. at ¶¶ 12-17. Class Counsel zealously represented Plaintiffs and the Settlement Class members' interests throughout the litigation, and continue to do so. Class Counsel are confident in the strength of Plaintiffs' case, but are also pragmatic in their awareness of the various defenses available to Defendants, and the risks inherent in obtaining class certification, and prevailing at trial and on appeal. The success of Plaintiffs' claims turn on questions that would arise at class certification, summary judgment, trial, during an inevitable post-judgment appeal,

15

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

and in proceedings before the Supreme Court and FCC to which Plaintiffs are not parties. Under

the circumstances, Class Counsel appropriately determined that the benefits of the Settlement

outweigh the risks of continued litigation. And the absence of any objections from Settlement

Class Members, strongly support Class Counsels' conclusion.

### 6.    The Reaction of the Settlement Class Members Supports Final Approval

A low number of opt-outs and objections in comparison to class size is typically a factor

that supports settlement approval. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D.

Cal. 2015)  (granting final approval where 47,336 class members submitted claims, only 57

timely opted out, and six filed objections); *see Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529

("It is established that the absence of a large number of objections to a proposed class action

settlement raises a strong presumption that the terms of a proposed class action settlement are

favorable to the class members.").

Here, the Settlement Class clearly endorses the Settlement. No Settlement Class

Members have objected and only 13 have opted out. Geraci Decl. at ¶ 15-16. Accordingly,

Settlement Class Members' reaction to the Settlement weighs strongly in favor of final approval.

### B.    Notice Was the Best Practicable and Was Reasonably Calculated to Inform the Settlement Class of its Rights

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class

members who would be bound by a proposed settlement, voluntary dismissal, or compromise

regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for*

*Compl. Lit.* § 21.312  (internal quotation marks omitted). The best practicable notice is that

which is "reasonably calculated, under all the circumstances, to apprise interested parties of the

16

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) . To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also Manual for Compl. Lit.* § 21.312 (listing relevant information).

The Notice program satisfies these criteria. As approved by the Court, the Notice Program included direct mail notice and publication notice. The notices advised Settlement Class members of the substantive terms of the Settlement, their options for remaining part of the Settlement Class, for objecting to the Settlement or to Class Counsels' attorneys' fee application and request for Service Award, and for opting-out of the Settlement, and how to obtain additional information about the Settlement. In total, notice reached more than 96% of the known Settlement Class. As a result, the notice to the Settlement Class was the best practicable notice, because it was intended to, and in fact did, inform the Settlement Class of its rights.

### C.    The Settlement Class Should Be Finally Certified

This Court conditionally certified the Settlement Class for settlement purposes only. ECF #. 73. For all the reasons set forth in Plaintiffs' preliminary approval briefing, incorporated by reference herein, and the Preliminary Approval Order, the Court should finally certify the Settlement Class as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

17

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.   CONCLUSION

The Settlement securing $5,500,000 in immediate monetary relief represents an excellent result for the Settlement Class given the risks and obstacles in this Action. The Settlement more than satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3). Accordingly, for the foregoing reasons, Plaintiffs and their Class Counsel respectfully request that this Court grant Final Approval to the Settlement and enter Final Judgment.

Date: April 16, 2021

Respectfully submitted,

By: *s/ Edward A. Broderick*
Edward A. Broderick (*pro hac vice*)
ted@broderick-law.com
Broderick Law, P.C.
176 Federal Street, Fifth Floor
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Matthew P. McCue (*pro hac vice*)
mmccue@massattorneys.net
The Law Office Of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Anthony I. Paronich (*pro hac vice*)
anthony@paronichlaw.com
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

18

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

Andrew W. Heidarpour (*pro hac vice*)
AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

*Attorneys for Plaintiffs William Loftus, Sidney
Naiman, and Louis Naiman and the Settlement
Class*

19

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Edward A. Broderick*
Edward A. Broderick

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 3:19-CV-01608-RS